## BUTLER (Overseers) *v.* SUGARLOAF (Overseers).

Payment of rent by a surety, is a sufficient payment to gain a settlement for the lessee, (a pauper,) under sect. 9, act of 1836.

CERTIORARI to the Quarter Sessions of Luzerne.

*July* 17. The question in this case was, whether Allen, a pauper, had obtained a settlement in Butler township by occupation under a lease and payment of rent, under sect. 9, act of 1836. Prior to 1840, the two townships constituted one. In 1840, Allen leased a house in Butler for one year, at one dollar a month, with one Skull as his surety. He continued to reside there for one year, and the rent was paid by the surety, who was partially repaid by Allen. The justices refused an order of removal, and the court below (CONYNGHAM, P. J.) confirmed their order for the following reasons :.

"Under the evidence, it would seem to be clearly established, that Silas Allen had at one time a settlement in Sugarloaf, and removed into Butler, and there occupied real estate, as tenant under a written lease, for one full year, at the rent of twelve dollars per annum; that this rent was paid, part thereof, one dollar and twenty-three cents, by Allen, and the balance by Skull, his surety in such lease, whose advances were again in part repaid by the wife of Allen delivering to him a bushel of wheat, value ninety cents, and a stove, with pipe, valued at five dollars. Whether this payment of the rent be sufficient to establish a settlement under the words of the act of 13th June, 1836, is the question now to be decided.

"The ninth section of that act, third clause, provides, that a

settlement may be gained ‘by any person who shall *bona fide* take a lease of any real estate, of the yearly value of ten dollars, and shall dwell upon the same for one whole year, and pay the said rent.’ All the pre-requisites here are proven, except the disputed one, of whether the pauper paid the rent. It is conceded to have been paid, and there is no dispute about the fairness of the payment; but did Allen make the payment? Directly, it was settled by his surety, Skull. Is this, in law, to be considered a payment by Allen? The debt for the rent no longer exists; how and under what particular circumstances, and why it was paid, we know not; we only know that it was paid and discharged by one who was bound to pay the amount; and whom Allen, for any balance yet unpaid, is bound to remunerate. If Allen had borrowed the money of Skull, and had paid the rent himself; or if he had requested Skull to pay it for him, on a promise of re-payment, there would have been no question about the effect: though, in fact, the rent would then have been paid by the credit only of Allen, without the advance of a single dollar by him. Whether Skull was ever repaid the loan, in fact, would not vary the result. Is there any difference, then, in the effect of a payment by a surety, who is called upon to comply with his obligation, and to whom, under such circumstances, so far as the liability of the principal to refund is concerned, the law implies a request to pay? The indebtedness of the principal, or borrower, in either case, would continue the same; and the only difference of the bases, upon which the respective claims would stand, would be between an implied and express request or promise—a difference without any legal distinction. The lessee in the several cases mentioned would cause the rent to be paid; and, for all legal purposes, it would be regarded as an actual payment by him, except between himself and the party assisting him.

“The claim of settlement is a privilege the tenant has a right to look to, at the termination of his lease. Suppose, in a case like the present, he is unable to meet his rent on the day it becomes due, and the surety pay it, and the next day the tenant re-pay the advance; is his right of settlement gone? Must he remain another year before he can establish a claim upon the township? It is the payment of *rent* which establishes the settlement, and *that* is paid by the surety: the re-payment to him is only for so much money paid out for the tenant, and is not to be regarded as rent. There might be such a case, that the courts would subrogate the surety to the rights of the landlord; but this would only be in equity for

the benefit of the surety, and never for the benefit of the tenant, to revive a right which his neglect to pay at the day in such case would have lost.

"The construction of such a payment being a payment by the tenant is recognised by the Supreme Court of the state of New York, in a case partly analogous, where the question of settlement turned on the payment of a tax by the pauper. I refer to Wallkill v. Mamakating, 14 Johns. 87. There it was held, that the voluntary payment of the tax by a collector would not be sufficient to charge the township. And why? 'The payment by the collector,' as the court say, in their opinion, 'was not at the request of the pauper, nor under circumstances that would have allowed the collector to maintain an action;' 'and unless the pauper could have been made liable to the collector, *he* could not have been said to have paid.' The reverse of the rule, equally clear, would be, that wherever there was a legal liability over, then if the tax (or in our case the rent) should be paid, it would be considered as made by the party for whose benefit it was done. In the very case now before us, the appellants adopt this rule, in claiming that the settlement of Allen in Sugarloaf is partly established by the payment of a tax for him by Smith, his employer, re-paid, it is true, in the settlement between them afterwards; but still the tax was paid *for* him by another, and not directly by himself. It is believed, too, that under the general principles established by our own Supreme Court, in Heidleberg v. Lynn, 5 Whart. 433, the spirit of the act would sustain the same view of the case. 'The pauper here was of benefit to the township as a producer;' causing the rent to be paid, at least by the credit which he had, and having thus, on his part, fully satisfied the consideration for which the township agreed to support him, the township should now fulfil its part of the contract.

"It is to be remembered, that in this case, no question is raised as to the *bona fide* character of the payment of the rent: this is proved by a citizen of Butler, who, it is not to be supposed, would be desirous of fraudulently burdening his township with the pauper, and he states it as an ordinary business transaction. Had the payment been made by a stranger, or even by a surety for the special purpose of fixing the pauper upon the township, it would have been regarded as fraudulent, and this fraud would probably in law have defeated the dishonest purpose. Such are the decisions in King v. Tillingham, 1 Barn. & Adol. 180, (20 E. C. L. R. 374,)

and The King v. St. Sepulchre, Ibid. 924, (Ibid. 508,) believed to have been established in the construction of the stat. of 6 Geo. 4, sect. 57, providing, that in order to establish a settlement, the rent should be 'actually paid.'

"Upon consideration of the case submitted in the depositions, the court are of opinion that the rent has been paid by the pauper within the spirit of the act of June, 1836, and that he thereby acquired a settlement in the township of Butler, and, therefore, the judgment of the justices refusing an order of removal, is affirmed."

*Butler*, for appellant.—The duties required by the act, excepting those to be performed by femes covert and children, are to be performed personally. Payment of taxes assessed on a landlord will not give a settlement to a tenant: 2 Term Rep. 627. Nor will a voluntary payment by another enure to the benefit of the pauper for this purpose. It is clear there must be a personal residence, and the same words are required as to the payment of rent. The intention was, to give the right where something had been done which contributed to the common stock of property: Heidleberg v. Lynn, 5 Whart. 433.

*Wright*, contrà.—The satisfaction of the requirements of the act on the credit of the pauper, is the test, as is shown by the cases cited by the court below.

PER CURIAM.—Let the judgment be affirmed, for the reason expressed in the opinion of the court.